## Case No. 17,536.

### WHITE v. ARLETH et al.

[1 Bond, 319.] [1]

Circuit Court, S. D. Ohio. Feb., 1860.

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—EXCESSIVE DAMAGES—BREACH OF CONTRACT—PENALTIES—LIQUIDATED DAMAGES.

1. The court will not grant a new trial on the ground of newly-discovered evidence, unless satisfied that if a new trial was had a different result would follow.

2. The rule of damages for the non-fulfillment of a contract for the delivery of property, is the difference between the price at which it was agreed it should be delivered and its actual market value at the time and place of delivery specified in the contract.

3. The court will not set aside a verdict on the ground of excessive damages unless the damages are palpably excessive, or, if the ac-

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

tion is on a contract, they exceed the legal liability of the defendant under the contract.

4. Where it is stipulated in a contract that certain acts are to be done or omitted, and the contract is of such a nature that the actual damages of non-fulfillment are susceptible of computation in money, and a sum is named in the contract as a penalty or forfeiture for a violation, it is to be viewed as a penalty and not as liquidated damages, and in such case the actual damages sustained will constitute the rule of recovery.

5. Where the word "penal" or "penalty" is used in a contract, it must be construed as being so intended by the parties, but where a sum named is called "liquidated damages," it will be held as a penalty if it seems from the contract that it was so intended by the parties, and the justice of the case requires such a construction.

[This was an action by James White against Frederick Arleth and Andrew Shroth. Heard on motion for a new trial.]

J. Brown, for plaintiff.

R. M. Corwine and Joseph Egly, for defendants.

LEAVITT, District Judge. In this case a jury having rendered a verdict in favor of the plaintiff for damages, the defendants have filed a motion for a new trial, upon the grounds following: (1) The verdict was against the evidence. (2) Newly-discovered evidence. (3) Excessive damages. (4) Misdirection of jury by the court. The declaration is in covenant on an agreement under seal, averring that Arleth, as principal contractor, with Shroth as his surety, agreed to furnish plaintiff for six months from November 10, 1858, the still-slop of three hundred bushels of grain daily, at six and one-half cents per bushel. It is averred that Shroth bound himself as surety in the penal sum of one thousand dollars, that Arleth would run his distillery and furnish said quantity of slops for the six months and at the price stated.

Plaintiff avers his readiness and willingness to receive and pay for said slops, and avers as the breach of the contract that Arleth has failed to deliver the slops according to the agreement, and claims as damages the difference between the contract price of the slops and their market value at the time they should have been delivered. The pleas originally filed were: (1) A general plea of performance; and (2) that plaintiff had released and discharged the defendants from their obligation under the contract. The plea of performance was withdrawn before trial, and the case was put to the jury on the plea of release and discharge from the contract. The plaintiff proved by a witness, Leslie, that the hogs were at the distillery on the 10th of November, and that he was from that time ready to receive the slops; that no slops were delivered for several days after the 10th of November, and that up to the 26th of January following, there was only a partial delivery of the quantity required by the contract, and that on that day Arleth shut up his distillery and no more were delivered. The witness also stated that

he was always ready as the agent of plaintiff to pay for the slops according to the contract, and did pay in full all that was delivered up to the 18th of January. It was also proved that the price of slops from November to January ranged from ten to twenty cents, and that the average price from January to May was about fifteen cents a bushel. Having offered this evidence, the plaintiff rested, and the defendant introduced a witness, Frederick Arleth, Jr., the son of defendant Arleth, who stated, in substance, that he was present at a conversation between his father and the plaintiff, on the 13th of November, in which Arleth said to plaintiff he would not deliver any more slops under the contract, and that plaintiff must take his hogs away, as he had broken the contract in not having the hogs there on the 10th of November. This witness says that after some further conversation between Arleth and White, Arleth agreed to furnish slops at the contract price, but not for any certain time, nor in any certain quantity. The witness does not say that the plaintiff, White, assented to the proposed modification of the contract. The defendant also introduced several witnesses tending to prove that the plaintiff's hogs were not at the distillery on the 10th of November, and that, therefore, he was was not ready to receive the slops according to his contract. The case was committed to the jury upon this evidence, and the jury were instructed by the court, that if they believed the original contract had been changed or modified by the parties, and that both parties had recognized and acted under such modified contract, the plaintiff was not entitled to recover under the original contract, on which he had declared in this action, and that in that case their verdict must be for the defendants. The credit and weight to be given to the evidence as to the change of the contract, was left to the jury on the evidence. And the jury were instructed, that if there was no change in, or rescission of the original contract, the defendants were liable for a breach of that contract, and that the rule of damages was the difference between the price at which defendants agreed to deliver the slops, and their actual market value at the time they should have been delivered. The jury came to the conclusion, on the evidence, that the original contract was in force, and computed damages accordingly for the plaintiff. It was the province of the jury to pass on the evidence as to a change of the contract; and, having done so, according to their views of the weight of the evidence, the court does not feel warranted in disturbing the verdict as being against evidence.

The newly-discovered evidence of the defendants is to the effect, that Leslie, the witness for the plaintiff, was not at the distillery with the hogs on the 10th of November. The affidavits are by no means conclusive on this point. But a new trial can not be granted on this ground; because the effect of the evidence is only to impeach, or contradict a wit-

ness who testified on the trial. If produced, the evidence would be only cumulative. If a new trial were granted on this ground, and this evidence introduced, it would not be material and relevant. The only effect would be to show that plaintiff was not ready to receive the slops on the 10th of November; but if this were so, it would be no ground for a forfeiture of the contract. and defendant would have his remedy by action, for a breach of the contract. A court will not grant a new trial on the ground of newly-discovered evidence, unless satisfied, if a new trial was had, a different result would follow.

A claim of excessive damages is urged as a ground for a new trial. It is impossible for the court to know on what data the jury estimated damages; but, as the question of damages is always within the discretion of the jury, a court will not set aside a verdict on that ground, unless the damages are palpably excessive; or, if the action is on a contract, they exceed the legal liability of the defendant under the contract. Upon the first ground stated there is no reason for disturbing this verdict; for if the contract does not limit the damages to be recovered for a breach, to a specific sum, upon the legal rule given to the jury, the amount of damages was easily computed by the jury. and the amount returned by the jury does not exceed the rule. and is not, therefore, excessive. But it is insisted by the defendant's counsel, that this contract limits the amount of recovery for a breach to $1,000, and that the jury could not exceed this sum. This point was not pressed by counsel, on the trial, and no special instruction being asked for, the court did not embrace it in its charge. If this point is sustainable in law, the verdict must be set aside. The court will now briefly consider the two questions involved, which are: (1) Have the parties fixed by their contract the amount of damages to be recovered for a breach? (2) If there is no such limitation as to Arleth. the principal in the contract. is there a right of recovery as against Shroth, the surety of Arleth. who is sued jointly with him?

It will not be necessary to inquire whether, under the pleadings in this case, the defendants are in a position to urge this point. Strictly and technically, as there is no plea but that of release and discharge of the defendants from their contract, there is an admission of record that the contract is as set forth in the declaration, and that damages are recoverable as claimed. But waiving this point. is the plaintiff limited by this contract to $1,000 damages. either as against the principal or the surety? Without reciting the contract at length, it will be sufficient to state its substance. Taken as a whole. it is a contract by which the defendant. Arleth, a distiller, agrees to supply the plaintiff for one year from November 10, 1858. daily. Sundays excepted. the slops for feeding hogs which will be produced by an average of three hundred bushels of grain per day, with the right reserved by Arleth to put an end to the contract at the expiration of six months. And the plaintiff binds himself to pay for the slops at the rate of six and one-half cents the bushel, through the whole year, if Arleth shall elect to continue the contract after the end of six months, and to pay for the slops every two weeks. Arleth . agrees to furnish tubs for the slops, and fill the slops into the tubs, and pens for six hundred hogs. And the parties agree, that if during the year the distillery should be burnt, or otherwise injured, Arleth is to be relieved from the contract for the time necessary to repair or rebuild. Then comes the sixth clause in the contract, which is in these words: "The said Arleth binds himself to the said White. his representatives or assigns. in the penal sum of $1,000. that he will run on, and furnish slop for the period of six months, commencing on November 10, 1858, and he gives Andrew Shroth as his surety for the performance of this condition. And the said Andrew Shroth hereby agrees to be the surety of said Arleth, by signing his name to this instrument. It is then provided, that if Arleth should decide to furnish the slop for the whole year, Shroth will continue his surety in the same manner as for the first six months. By the last clause in the contract, White agrees that if he should refuse to take and pay for the slops at any time, according to the agreement, he will pay to Arleth "the sum of one thousand dollars as liquidated damages, for the payment of which, he, and Andrew Shroth as his surety, hereby bind themselves." This contract is somewhat peculiar in this—that the same person is surety for both the contracting parties; and in this, also, that in that part of the contract in which Shroth binds himself that Arleth shall supply the slop, as provided for in the contract. the sum of $1,000 is designated as a penalty, or "penal sum." and in that part of the contract in which White is bound to pay $1,000 for a failure, and in which Shroth undertakes as his surety, it is called "liquidated damages." The first question arising is, whether the defendant, Arleth, is liable in an action for a breach of this contract for more than the $1,000 penalty named in the contract? There can be no question that the $1,000 is to be viewed, not as liquidated damages. but as a penalty. The language of the contract, as well as its character, justify this construction. The defendants expressly designate it as "the penal sum of $1,000." As before noticed, the plaintiff agrees that as to him. if he fails in the performance of his part of the contract, the $1,000 shall be deemed "liquidated damages." The words may, therefore, be well presumed to have been understood by the parties. The authorities are numerous. that in a contract in which certain acts are to be done, or omitted, and the

contract is of such nature that the actual damages are susceptible of computation in money, and a sum is named as a penalty or forfeiture for a violation, it is to be viewed as a penalty and not as liquidated damages, and in such case the actual damages sustained will constitute the rule of recovery. Tayloe v. Sandiford, 5 Pet. Cond. R. 210, 7 Wheat. [20 U. S.] 13. In Sedg. Dam. the point is very fully discussed and many authorities referred to, English and American. The rule seems invariable, that where the word "penal" or "penalty," is used, it must be construed as being so intended by the parties. But the converse of this rule does not hold. There are many cases in the reports to the effect, that though the sum named is called liquidated damages, it will be held as a penalty if it seems from the contract that it was so intended by the parties, and the justice of the case requires such a construction.

In this contract, it is fair to infer it, as the intention of the parties, that the sum named as the penalty in case of a failure by the defendants, was inserted, not as the measure of compensation in case of an abandonment of the contract, but as designed to secure a faithful observance of its stipulations by White. By the contract, the defendant, Arleth, was bound daily to deliver the slops certainly for six months, or, at his option, for a year; and White was obligated to receive the slop, and pay for them every two weeks. It is not to be presumed that the parties intended the $1,000 as a full indemnity under any circumstances of failure that might happen. It follows that the jury were not limited, in the computation of damages, to the penalty named in the contract. Considered as a penalty, it was optional with the plaintiff to sue for that or claim the actual damages which he could prove from the non-fulfillment of the contract by the other party. The rule seems to be, without exception, that where the action of covenant lies, the parties may sue either for actual damages or for the penalty.

It is conceded that a surety can not be held liable beyond the obligation he assumes. Defendant's counsel contend that he only assumed a liability for $1,000, and can not be held responsible beyond that. The undertaking by defendants, Arleth and Shroth, must be viewed as joint. Arleth agrees that he will run the distillery for six months and supply the slop daily; and Shroth, as surety, covenants that Arleth will do it. It is a joint undertaking, and they may be jointly sued. The measure of the surety's liability is the same as that of Arleth, and he is liable to the same extent. If Arleth is liable for actual damages beyond the penalty named, his surety is liable to the same extent. Upon the whole, the court can see no ground for disturbing this verdict. Upon the law, as stated, the jury had a right to compute the actual damages sustained by the plaintiff. The amount was susceptible of easy computation. The contract proved the quantity of slop which Arleth agreed to deliver, and the price which he was to be paid. There was clear proof of the quantity delivered during the six months, which made it clear what the deficiency was. There was clear proof of the market value of the slop for the period during which there was a failure. The average market price of the slops, for the eighty-eight days during which Arleth failed to deliver the slops, was fifteen cents a bushel; and the difference between that and six and one-half cents, the contract price, was the rule of computation which the jury pursued, etc. It is doubtless true, that owing to the great advance in the price of grain after the date of the contract, its performance involved great loss on the part of Arleth. But this was his misfortune, for which the court can not give a remedy. Motion overruled.